Good morning. Good morning. Good morning, Your Honors. May it please the Court. My name is Jessica Brostek on behalf of Plaintiff Appellants. I am a certified law student with the UC Irvine Appellate Litigation Clinic, and this is my co-counsel, Gene Ahn. I will be taking the first four minutes to discuss the excessive force claim. Gene will take the next four to discuss the search and knock-and-announce issues. Thank you. We'd also like to reserve two minutes for rebuttal. Pointing to the excessive force, this Court has held that it is a balancing of the intrusion on the plaintiff's Fourth Amendment rights with the government's countervailing interests at stake. To do so, the Court looks at the totality of the circumstances and evaluates appropriate factors in each case. Further, this Court has also held that motions for summary judgment should be granted sparingly on excessive force claims because they are highly factual in nature. Here, the police were looking for paper evidence of a man that was already in custody and did so with guns drawn, nine officers, and handcuffs on one plaintiff for four to five hours. Let me ask you a question. I understand that they say they knocked and announced, they had a search warrant, there was no answer, they knew people were in the house, so they, in effect, forced their way in. Under those circumstances, why would it be unreasonable to have guns drawn if they know people are there and are just waiting for them to bust in? Your Honor, this Court has held that the threat of deadly force alone is a Section 1983 and Fourth Amendment violation. Doesn't it depend on the context? I mean, this isn't an ordinary house. It's well known to have a lot of people in it, a lot of really sketchy people in it, and a history of violence in it. Yes, Your Honor. However, the plaintiffs here were immediately cooperative with the officers' requests, yet one plaintiff had a gun pointed at her for a minute at her head. Let me stop you just for a second for clarification. Tell us exactly what the excessive force was, and then you can proceed with your argument. What was the excessive force? It was the use of guns, handcuffing. Use, what do you mean? Pointing the guns? Pointing of the guns. Okay, all right. I apologize. Is that it? The pointing of the guns, the handcuffing of a woman immediately upon pulling her out of bed, and the use of nine officers in totality can be excessive force. All right, and so now you're talking about the use of guns, drawing the firearm and pointing it at somebody, right? Yes. All right, now how long did that last? Anywhere from 30 seconds to a minute in the record. 30 seconds to a minute, okay. Go ahead. However, there's also evidence in the record that the police had their guns out for the entirety of the search. One person claimed that they had their guns out for the entirety. What significance do you attach to the fact that they knew people were in there, but they wouldn't come to the door and they would have to force their way in? Your Honor, that is also a disputed fact in this case. I didn't see where you disputed that at the motion for summary judgment stage. I'm sorry? I didn't see where you refuted that at the motion for summary judgment stage. Yes, Your Honor. That is in the plaintiff's complaint, and my co-counsel will discuss that at length. Not your complaint in response to the motion for summary judgment. Right. It was not in the plaintiff's original pro se papers for motions for summary judgment at the district court. However, it was raised in their complaint, and we raise it here for appeal. Well, if you don't raise it in response to the summary judgment motion, aren't you precluded? No, Your Honor, not all instances. This Court has held that exceptional circumstances can be appropriate to consider quote, unquote, waived claims. However, here these are pro se plaintiffs, and this Court has held that pro se plaintiffs are sometimes exceptional circumstances. Well, what's exceptional about this case? Your Honor, these plaintiffs were representing themselves, and there was a lot of different legal theories that were presented in their complaint. If you look at their papers, there's a lot of confusion in what was going on in the papers. And additionally, this Court has also held that Fourth Amendment violations or I'm sorry, that due process violations question the integrity of the judicial system, and those claims should be addressed by this Court. Like due process claims, Fourth Amendment claims are vital to this Court's decision because they question the integrity. If we were to disagree with you about that and say, well, you didn't contest it, that argument is waived, is there any other basis to say that once they have to force their way in to a home that they know is occupied and they won't come to the door, that they can't use, you know, unholster their guns briefly? Respectfully, Your Honor, that is for a jury to decide, and that's the crux of our argument in this case, whether this force was unreasonable and how much force was necessary. This Court in Cameron has, if you wouldn't mind if I concluded, this Court in Cameron has already concluded that the use of guns, the use of handcuffs, and 6 to 10 officers was excessive force and should do so in this case and remand for a jury. Thank you, Ms. Bresler. Good morning. Good morning, Your Honors. May it please the Court, Jean Ahn, on behalf of Plaintiff Appellants. This Court should reverse and remand because the district court erred in granting summary judgment on the search for two reasons. There is a clear factual dispute as to the knock-and-announce. And second, a reasonable jury could have found that the search itself was unreasonable. As for the knock-and-announce, there is a clear factual dispute because plaintiffs claim that they did not hear a knock. Under the summary judgment standard, the facts should have been in favor of the plaintiffs. Furthermore, because of the knock-and-announce rule, that someone actually hear it? I mean, suppose you have someone who is hearing impaired and they shouted loudly that they are there. Does that mean it's not valid? That is correct, Your Honor. However, because the defendants themselves admitted that they knocked and waited only a few seconds, their own admission is a Fourth Amendment violation in regards to the knock-and-announce. This Court in Cameron. But they said they knocked. And there is no contrary evidence. And that's why I asked the question I asked. Because if someone says, I knocked, and someone says, well, I didn't hear that, it's not directly contradictory. They can both be true. That is correct, Your Honor. However, because there is contradictory testimony as to whether or not they heard the knock or if it existed or if the knock-and-announce was true. That's what I'm saying. What is the contrary testimony to their testimony that they did, in fact, knock? Is there anything to the contrary? The contradictory testimony here is that the plaintiffs did not hear a knock. And there's an inference that the knock did not occur for that reason. Well, what you're calling testimony is their complaint. That is correct, Your Honor. It was not really testimony or an affidavit or anything like that. It is in the complaint at ER-489. And it's also in the amended complaint as well. And this Court has found in Re-Newton that pro se litigants, even if they do not develop a theory fully, that the Court should still be able to look at the issues here. Furthermore, because this is similar to a due process right, in Pantel this Court found that it is an exceptional circumstance where plaintiffs are not able to, or if they haven't developed it fully, if they maybe have waived it or they haven't even raised it on the complaint or in the amended complaint, this Court should still be able to do this. Furthermore, there is, this Court in Mena also found that because there's contradictory testimony, summary judgment was not appropriate as to the knock and announce. This Court has also found. If we were to disagree with you that there is a conflict, that there is nothing in contradiction to the fact that there was a knock, how does that change the analysis? The analysis. Does that mean that you necessarily lose? Because even if the Court doesn't see that there is conflicting evidence, even if the Court views the defendant's admission as to waiting a few seconds, this Court in the United States v. Granville also found that five seconds was insufficient before they were able to enter the house. For that reason, the defendant's admission of waiting a few seconds is very similar to the five seconds that was insufficient. Furthermore, this Court in Howell v. Polk found that the reasonableness as to executing a search warrant is also appropriate for a jury to decide. And for that reason, it also goes into the search itself. A reasonable jury could have seen this search, an extensive search of the Sharp residence going into closets and dressers, and they could have found that it was unreasonable. Did the warrant was for papers and things like that? Yes, Your Honor. What's wrong with looking in the closet? Your defendants admitted that they did not think that Ms. Hart, Ms. Franks, or Ms. Reed had such evidence. Yet they continued to search inside of the dressers and closets of those individuals. Which the warrant authorized. The warrant authorized for them to be able to look for paper evidence pertaining to Mr. Goodwin. However, this Court in Menendee City of Simi Valley also found that if defendants go in and they know that it is without the control of where the suspect could be, then it would be – it is clearly established law that the defendant should discontinue the search. Here, defendants, however, knew that Mr. Goodwin was usually sitting in the attic. And furthermore, because the defendants admitted that they did not think the evidence would be there, it went beyond the scope of the search warrant. Thank you, Ms. Hart. And if I may, Your Honor, this Court should reverse and remand for further proceedings, and I would like to reserve the remaining time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. I'm Gerald Warren on behalf of the defendants. This case is important to law enforcement in Oregon, particularly my clients, of course, but it's a case that asks whether, as you asked, Your Honor, Judge Tashman, whether police, every time they pull their weapons out, when they conduct a search, that it's turned into a jury question. And as Judge Graber noted, this isn't an ordinary house. This is a flop house, if you will, where Mr. Sharp opens his house to a number of people, whatever his motivation is, those people are there, and the police know it when they respond. So a great deal of police resources have been dedicated to this house, numerous prior arrests. I cited in the brief about the prior violent arrest that was there. So the police have to be able to go into a situation like this, where they don't know what the level of threat is, and have their weapons open or out for a brief period of time. It was a limited purpose, a limited duration, and that's what's important to this case. Are they required to knock and announce? I'm sorry, Your Honor? Are they required to knock and announce? Yes, Your Honor. And is that a disputed fact? As to whether they knocked and announced it? Right. Well, the plaintiffs subsequent on appeal have disputed it, but they didn't dispute it down below. What is the significance of their verified complaint? The significance in terms of raising the issue and briefing it and allowing us to put evidence on in addition to what we had as a waiver. I think they waived that issue. It isn't like the cases they cited where the knock and announce questioned the whole judicial integrity of the system. Instead, this knock and announce in this case would question the integrity of one or two officers who say they knocked. Unlike what counsel said, they didn't wait a few seconds. They knocked three times. I'm not saying they did or didn't. I'm saying that they have put that in controversy, or I'm asking you if they put that in controversy by putting that in a verified complaint. I don't believe they have, Your Honor. Then why not? By not raising it in any of the pleadings, I mean any of the motions, by not raising it in any of their discovery, and then to suddenly bring it up on appeal and say that's the reason we get to reverse, that's not fair to the court below, it's not fair to the defendants. And the knock and announce, the only evidence they have in this case is the one person who says, and they leave out this part in their brief, I was cleaning and wasn't paying attention so I didn't hear the knock and announce. And, again, as Judge Graber said, just because somebody doesn't hear it doesn't mean it didn't happen. They don't have anybody who says it didn't happen. We have the officers who said they knocked three times and then waited a few seconds and then entered in through an open door. Counsel, I have another question I'd like you to address. I believe it was Plaintiff Reed who was asleep and was awakened and said the first thing she saw was a gun in her face and that it was pointed at her for about a minute. And that may or may not be true, but that is part of the record and we have to look at it in the light most favorable to the plaintiffs. Why couldn't that long a pointing of a firearm in the face of somebody who is awakened and presumably lying in bed, not being dangerous at that moment, why couldn't a jury conclude that that one specific thing was excessive? Well, I think, Your Honor, then we would go to qualified immunity. I mean, a jury could certainly conclude different things based on this record, but the reality is the officers weren't on notice that they couldn't do something like that. They went into a room where there's another gentleman in there. They don't know what threat he is. And so if they go in there, if this indeed happened, she says, I base the minute on because I see the clock minute turn as I look at it. Right. It doesn't matter whether it is in fact true. We have to assume that it's true and a minute is a long time to have a gun pointed at you when you're lying in bed. Sure. Well, again, I guess I would say, Your Honor, that the circumstances of needing to go in to get control, it was a limited purpose, limited duration, the entire time. That doesn't really answer the question. What was the threat that she posed at that moment lying in bed that allowed them or would have allowed them to believe it reasonable to focus on her for a minute with a firearm? Well, I guess, Your Honor, again, they're just taking control of the situation. I think ultimately that fact may be in dispute. However, I understand the court has to assume that that indeed happened. The reality is that when they go into a darkened room like that and there's two people in there, perhaps they had the gun on her for a period of time. She says they put it away as soon as they handcuffed her. So balancing the interests of the government and the privacy interests under those circumstances and a minute, if indeed it was a minute, as the court must assume, if indeed it was a minute, then we would just assert that we're entitled to qualified immunity. There's no other case that says you couldn't do that. Cameron came up in 2013. Dawson was in 2006. This situation happened in 2011. So there's nothing that would put these officers on notice that they couldn't do something like that. Mr. Warren, Mr. Warren. Based on the first set that they, the three threats they posed. Mr. Shima has a question. Mr. Warren, you said earlier in your argument that this was a known flop house, right? I used that term, Your Honor. What I'm getting at is that so did the police have some, you know, basis for drawing that conclusion? I mean, or they had some familiarity with the building. Is that right? Oh, absolutely, Your Honor. Now, did they know that the plaintiff, you know, was, I'll call it, the primary resident of this flop house? Or the legal resident or whatever you want to, I mean, did they know it was his home? Yes, Your Honor. All right. So in spite of the fact that they knew it was his home, they didn't seem to treat it like a home, did they? Well, Your Honor, you'll notice that they didn't handcuff Mr. Sharp. They didn't point a weapon at him. He doesn't make any of those claims because they did know him. The other threats they didn't know, the potential threats in the house. And so that, I mean, the residents, they went in for a purpose of obtaining criminal information, found more evidence of a crime once they got in there. And they did the right thing and went and got another warrant to look for those things. Well, is part of your case is that when the police first arrived and they knocked and announced there was some commotion inside the house, is that right? Or some crying out or something of that nature? No, Your Honor. I don't think they said that they ever heard anything. When they go in the entryway, there's a female there working on the computer. And that was, you know, the first person they encountered. But the only thing they heard was Mr., I believe it was Carol, who came out of the man door of the garage, who apparently heard the knocking or something, and he came out, and then he was arrested ultimately on a warrant. But does your position amount to then that, in effect, what happened in this early, I'll call it the early phase, was, in essence, a protective sweep? Part of a protective sweep, you know, maybe a prelude to or the early part of executing the warrant itself? Oh, absolutely, Your Honor. Yes, sir. Yes, I mean, it was done because they're trying to get in there, and then that's why they told Mr. Sharp. He kept saying, can we read the warrant? Well, get to that, Mr. Sharp. But they've got to, first of all, secure the residence. They've got to get them into a central location, which is safer for everybody, safer for the residence, avoids the destruction of evidence. And so all the reasons that justify collecting the residence into a common area were present in this situation. So, again, Your Honor, this case is important to my clients. It's important because the officers need to be able to enter a place like this of unknown threats and to secure the residence and secure the situation so that they conduct the business that the court asked them to conduct. The judge is authorized to serve. If there are no further questions, I thank you, Your Honor. Thank you, Mr. Warren. Let me ask one more question. Is it contested or not contested as to how long this, you know, I'll call it the use of the arms phase lasted? No, Your Honor. I think that at the outset it would be a minute, minute and a half. Now, they're not suing because other people were walking around with their weapons out. They're suing because they were pointed at their clients. And that pointing lasted 30, 60, 90 seconds, something like that? I mean, they were all based on estimates of people being awakened in the night. One estimated, I think, 30 seconds, but one estimated a minute. She said guesstimate a minute. And that was the one that was ultimately arrested, Your Honor. Yes. All right. Thank you. Thank you, Mr. Warren. Rostick, you've got two minutes left. Thank you, Your Honor. The Fourth Amendment applies to all houses, including this one. In this case, it was not simply entering with guns drawn. They pointed guns at the heads and chests of plaintiffs and, as Judge Graber said, from a minute from someone who was immediately awoken from their bed, before there was any suspicion. How were they to know that she doesn't have a gun under her pillow? Yes. Your Honor, that is a determination for the jury to be looking at the facts. And, again, we would read that. And that's not a jury question. You go into a house where they don't answer the door or they have a search warrant, she's in bed, how do they know she doesn't have a gun under her pillow until they pull her out of bed and check? This goes to the defendant's larger claim of this unknown threat, Your Honor. And this Court has already answered similar contentions in Cameron, where it said, perhaps, but that is for a jury to decide. But, Counsel, it depends a lot on the nature of the house. A one-room house occupied by, you know, an 80-year-old retired teacher is not the same level of reasonableness as a place that is a, quote, boarding house, I believe the phrase was, with, you know, convicted felons and a lot of what I would use the word sketchy residents and a history of violence. What is reasonable in that circumstance is quite different, isn't it? Yes, Your Honor. However, the differences, again, are something that the jury should be able to weigh. And that's ultimately what we would want the Court to conclude in this case. Further, the Court has asked about the not-going-to-announce claims, and the Counsel himself and the defendants themselves claim that they only waited a few seconds. This is a Fourth Amendment violation in and of itself. The Court said in Granville that five seconds was too short, and the Supreme Court and banks said that 15 to 20 seconds for cocaine disappearing was a close call. Here, a few seconds for paper evidence for a man that was already incarcerated was clearly not a close call. Thank you, Your Honor. We'd like to submit this case. Thank you, Ms. Brostick. Ms. Ahn. Mr. Warren, thank you. The case just argued is submitted. We also want to thank Dean Chemerinsky and your crew for taking this pro bono case and handling it so ably. Thank you.
judges: Tashima, Silverman, Graber